[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Creech,* Slip Opinion No. 2016-Ohio-8440.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-8440

THE STATE OF OHIO, APPELLANT, *v.* CREECH, APPELLEE.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Creech,* Slip Opinion No. 2016-Ohio-8440.]

*Criminal law—Evid.R. 403—In a case alleging violation of R.C. 2923.13, when name or nature of prior conviction or indictment raises risk of jury verdict influenced by improper considerations, a trial court abuses its discretion when it refuses defendant's offer to stipulate to fact of prior conviction or indictment and instead admits into evidence full record of prior judgment or indictment when sole purpose of evidence is to prove element of defendant's prior conviction or indictment—Court of appeals' judgment affirmed.*

(No. 2014-1844—Submitted December 2, 2015—Decided December 29, 2016.)

APPEAL from the Court of Appeals for Jefferson County,

No. 13 JE 41, 2014-Ohio-4004.

_____

**PFEIFER, J.**

{¶ 1} Defendant-appellee, Stedmund Creech, was charged with three counts of violating R.C. 2923.13; under that statute, persons previously convicted of, or under indictment for, certain felonies are prohibited from possessing firearms. Creech sought to limit how much the jury could learn about the underlying offenses upon which the weapons charges were based. We consider whether the trial court abused its discretion by not allowing Creech to stipulate to his prior convictions and indictment and by admitting the full record of his prior offenses. We adopt the reasoning of the United States Supreme Court in *Old Chief v. United States*, 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997), and hold that the trial court did abuse its discretion in this case.

## FACTUAL AND PROCEDURAL BACKGROUND

{¶ 2} On July 2, 2012, Creech was a passenger in a vehicle driven by Trystn Hampton. Creech rode in the back seat with Rolland "Buster" Owens and another man, who went by the name "J." The car was being followed by a vehicle driven by Antonio Johnson. Hampton stopped her vehicle in a residential neighborhood in Steubenville, and Creech and the other back-seat passengers exited. At that point, Johnson left his car and fired 17 rounds from an assault rifle at Creech and the other men.

{¶ 3} Owens pulled out his own gun, a .45-caliber, and took cover. A witness, Stephanie Luke, a relative of Owens and an acquaintance of Creech, testified that Creech also produced a weapon, a small, black gun; she was unsure whether he fired it, but she saw Creech and another armed man, presumably "J," walking toward the area from which Johnson had been firing. Owens, however, testified that Creech did not have a gun. When police found Johnson's vehicle, they observed a bullet hole in the windshield and recovered a .38-caliber bullet from inside the car.

**{¶ 4}** Creech fled after the incident. He was not apprehended until 11 months later.

**{¶ 5}** Creech was indicted on five counts. Two of the counts—improperly handling a firearm in a motor vehicle in violation of R.C. 2923.16(B) and carrying a concealed weapon in violation of R.C. 2923.12(A)(2) and (F)(1)—were dismissed upon the trial court's granting of Creech's Crim.R. 29 motion for acquittal at the close of the state's evidence.

**{¶ 6}** The other three counts are the focus of this case. Creech was indicted on three separate counts of having a weapon while under disability under R.C. 2923.13, which makes it illegal for a person to "knowingly acquire, have, carry, or use any firearm" under certain circumstances, including when the person is under indictment for or has been convicted of particular types of crimes.

**{¶ 7}** The first count alleged a violation of R.C. 2923.13(A)(3), which stemmed from the fact that at the time of the shooting incident, Creech was under a pending indictment for aggravated drug trafficking in the vicinity of a school; the grand jury had indicted Creech for the trafficking offense on June 6, 2012. The second count, alleging a violation of R.C. 2923.13(A)(2), was based on Creech's previous conviction for a crime of violence, felonious assault with a dangerous weapon, in 2009. The third count, alleging another violation of R.C. 2923.13(A)(3), was based on Creech's felony conviction for possession of crack cocaine in 2009.

**{¶ 8}** Thus, the state brought three separate charges—based on three disabilities—against Creech related to one incident of possessing a firearm. Creech attempted to prevent the admission of evidence regarding the prior convictions and indictment. On the morning of trial, Creech offered to stipulate to any one of the three disabilities under which he had been charged. Creech's counsel pointed out that the only reason that the state could present evidence of the prior convictions and indictment would be to prove the disabilities:

Obviously if he's convicted of all three of those offenses, they will merge for purposes of sentencing at that time, so I am willing to stipulate to a disability in any one of those counts and would ask that the State of Ohio be precluded from presenting evidence with regard to the other two, since we are dealing with only one weapon and one event, rather than presenting multiple evidence of previous convictions that the State otherwise wouldn't be able to present. * * * [S]ince we are willing to stipulate to a disabling act, whichever one the State wants to choose, I think they are required to, you know, to elect and permit us to stipulate to that particular fact in evidence.

{¶ 9} The court refused to allow the proposed stipulation, stating, "I don't believe the State is required to elect at this point in time or to even accept a stipulation, and therefore, I'm going to go forward with the indictment with all the charges that were presented."

{¶ 10} Creech's three disabilities were specifically addressed in the state's opening statement, in trial testimony, in exhibits submitted to the jury, and in the state's closing argument. In its opening statement, the state told the jury that Creech had been under indictment for aggravated drug trafficking near a school at the time of the shooting incident and that he had been convicted in 2009 of felonious assault with a deadly weapon and of possession of crack cocaine. During the trial, a detective testified that Creech was a convicted felon, testified as to his 2009 convictions and his 2012 indictment, and verified two exhibits—state's exhibits 5 and 6—documenting those convictions and that indictment. Exhibit 6 was a certified copy of the June 6, 2012 indictment of Creech for two counts of trafficking in cocaine, one count alleging that he did so within 1,000 feet of Steubenville High School. Exhibit 5 was a copy of the judgment entry of sentence for the 2009

4

convictions for possession of crack cocaine and felonious assault. The "Findings" portion of the judgment entry stated that the felonious-assault count resulted from the fact that Creech "shot at, but missed [the victim]." Creech's two-year prison sentence for the 2009 convictions also appeared in the entry.

{¶ 11} In closing argument, the prosecution stated,

[Defense counsel] and I would probably not agree on much, but we will agree that the only question for you is did Stedmund have a gun? There is no disagreement that he is a convicted felon. You will have back there in the jury room the documents that show you in 2009, he was convicted of felony possession of crack cocaine. It will show you in 2009, he was convicted of felonious assault, a felonious assault that he committed with a firearm, and that at the time he committed this offense, at the time that he had this weapon, he was already under indictment the month before for selling drugs near a school in the County. You will have all of those documents back there with you, and you can look at those, and I encourage you to do so; but use your common sense when you get back there, please, and think about what makes sense.

{¶ 12} The court in its jury instructions gave a curative instruction about the permissible use of the evidence of Creech's prior convictions and indictment:

Evidence was received about the commission of the crimes, wrongs, or acts, other than the offenses with which the defendant is charged in this trial. That evidence was received only for a limited purpose. It was not received, and you may not consider it, to prove the character of the defendant in order to show that he acted in

conformity or accordance with that character. If you find that the evidence of other crime [sic], wrongs or acts is true and that the defendant committed them, you may consider that evidence only for the purpose of deciding whether it proves that the defendant was under Indictment at the time of the alleged offense and/or the defendant had a prior conviction as specified in the Indictment.

{¶ 13} The jury returned with guilty verdicts on all three counts. The trial court found that the three offenses were allied offenses of similar import and merged them, sentencing Creech to one 30-month prison sentence and three years of postrelease control.

{¶ 14} Creech appealed his convictions and sentence to the Seventh District Court of Appeals, raising as an assignment of error that "[t]he trial court erred when it did not require the State to stipulate to Mr. Creech's indictment and prior convictions." 2014-Ohio-4004, 18 N.E.3d 523, ¶ 10.

{¶ 15} The court of appeals reversed the convictions and sentence and remanded the cause for a new trial, adopting the reasoning employed by the United States Supreme Court in *Old Chief*, 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574. In *Old Chief*, the Supreme Court held that pursuant to Fed.R.Evid. 403, a trial court "abuses its discretion if it spurns [a defendant's offer to concede the fact of a prior conviction] and admits the full record of a prior judgment, when the name or nature of the prior offense raises the risk of a verdict tainted by improper considerations, and when the purpose of the evidence is solely to prove the element of prior conviction." *Id.* at 174. The court of appeals concluded that the trial court's error in refusing Creech's stipulation offer in this case was not harmless, "given that there is conflicting evidence as to whether Creech had a gun and given the prejudicial effect of the admission of his prior bad acts to prove the element of disability." 2014-Ohio-4004, 18 N.E.3d 523, at ¶ 35.

**{¶ 16}** The state appealed to this court. The cause is now before this court upon the allowance of a discretionary appeal. 142 Ohio St.3d 1421, 2015-Ohio-1353, 28 N.E.3d 121.

## LAW AND ANALYSIS

**{¶ 17}** In *Old Chief*, the defendant, Johnny Lynn Old Chief, faced multiple federal charges, including assault with a dangerous weapon, using a firearm in relation to a crime of violence, and violating 18 U.S.C. 922(g)(1), which prohibits possession of a firearm by anyone previously convicted of a crime punishable by imprisonment for a term exceeding one year. Old Chief's prior conviction that made him susceptible to the 18 U.S.C. 922(g)(1) charge was assault causing serious bodily injury. Concerned that revealing the name and nature of his prior assault conviction would unduly influence the jury as it contemplated his present charges, Old Chief offered to stipulate to the fact that he had previously been convicted of a crime punishable by imprisonment exceeding one year. He argued that stipulating to the fact of a prior conviction for such a crime would render evidence of the name and nature of the offense inadmissible under Fed.R.Evid. 403, because the probative value of that evidence would be substantially outweighed by the danger of unfair prejudice. *Old Chief* at 174-175.

**{¶ 18}** The government refused to agree to a stipulation, arguing that it had the right to prove its case its own way. The trial court agreed and allowed the government to introduce the order of judgment and commitment for Old Chief's prior conviction. That document stated that Old Chief "did knowingly and unlawfully assault [the victim] * * * resulting in serious bodily injury," for which Old Chief was sentenced to five years of imprisonment. *Id.* at 177. With that evidence before it, the jury found Old Chief guilty of violating 18 U.S.C. 922(g)(1) and guilty on the other counts. He eventually appealed to the United States Supreme Court.

**{¶ 19}** The Supreme Court held that the trial court had abused its discretion under Fed.R.Evid. 403 by refusing to accept Old Chief's stipulation regarding his prior offense. *Old Chief*, 519 U.S. at 191, 117 S.Ct. 644, 136 L.Ed.2d 574. Fed.R.Evid. 403 authorizes courts to exclude relevant evidence when its probative value is substantially outweighed by the danger of "unfair prejudice." The court explained that "[t]he term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief* at 180. Quoting the advisory committee's notes to the rule, the court added that " ' "[u]nfair prejudice" within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.' " *Id.*, quoting Advisory Committee Notes on Fed.R.Evid. 403, 28 U.S.C.App. at 860.

**{¶ 20}** Propensity evidence is one such improper basis that might influence a decision, "generalizing a defendant's earlier bad act into bad character and taking that as raising the odds that he did the later bad act now charged." *Id*. The court pointed out that under the common-law tradition,

"[t]he state may not show [a] defendant's prior trouble with the law, specific criminal acts, or ill name among his neighbors, even though such facts might logically be persuasive that he is by propensity a probable perpetrator of the crime. The inquiry is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge."

*Id.* at 181, quoting *Michelson v. United States*, 335 U.S. 469, 475-476, 69 S.Ct. 213, 93 L.Ed. 168 (1948). Fed.R.Evid. 404(b)(1) incorporates the common law in directly addressing propensity evidence: "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."

{¶ 21} Thus, the court concluded that there was no question that propensity evidence would be an "improper basis" for conviction and that, therefore, evidence of a prior conviction "is subject to analysis under Rule 403 for relative probative value and for prejudicial risk of misuse as propensity evidence." *Old Chief* at 182.

{¶ 22} *Old Chief* is a case about the availability of an alternative version of evidence and the effect of its availability on the admissibility of evidence offered by the state. In balancing the probative value of certain evidence against its possible prejudicial tendency, the court observed, it is appropriate to assess evidentiary alternatives the same way. Probative value is measured partially by the relative scarcity of evidence on the same issue. *Id*. at 185. That is, if the state offers evidence for which there is an evidentiary alternative that has substantially similar or greater probative value but is less prejudicial, the probative value of the state's evidence must be discounted. The danger of unfair prejudice is then weighed against this reduced probative value.

{¶ 23} The court recognized that evidence of the name and nature of Old Chief's prior conviction could be unfairly prejudicial against him. In addressing the prior-conviction element of 18 U.S.C. 922(g)(1), the court wrote that "there can be no question that evidence of the name or nature of the prior offense generally carries a risk of unfair prejudice to the defendant" and that the risk "will be substantial whenever the official record offered by the Government would be arresting enough to lure a juror into a sequence of bad character reasoning." *Old Chief*, 519 U.S. at 185, 117 S.Ct. 644, 136 L.Ed.2d 574. This would especially be the case if a firearm were involved in the prior crime: "Where a prior conviction

was for a gun crime or one similar to other charges in a pending case the risk of unfair prejudice would be especially obvious * * *." *Id.*

{¶ 24} However, the court's inquiry did not end with its determination that the admission of evidence of a prior conviction presented a risk of unfair prejudice. The court had to weigh the danger of unfair prejudice against the probative value of the evidence. The probative value of the state's evidence was affected by the presence of an evidentiary alternative. Old Chief offered other evidence beyond the record of conviction that could prove the prior-offense element; the defendant's formal offer to stipulate that he had been convicted of a felony subject to a prison sentence of more than one year "amounted to an offer to admit that the prior-conviction element was satisfied, and a defendant's admission is, of course, good evidence." *Id.* at 186. More than just relevant, that admission would be "seemingly conclusive evidence of the element." *Id.* The court noted that 18 U.S.C. 922(g)(1) did not require specificity as to what kind of felony a defendant had to have committed to be prohibited from possessing a firearm:

> The statutory language in which the prior-conviction requirement is couched shows no congressional concern with the specific name or nature of the prior offense beyond what is necessary to place it within the broad category of qualifying felonies, and Old Chief clearly meant to admit that his felony did qualify, by stipulating "that the Government has proven one of the essential elements of the offense."

*Old Chief* at 186. Thus, in *Old Chief*, there was an evidentiary alternative that would discount the probative value of evidence that included the name and nature of Old Chief's prior offense.

**{¶ 25}** But is a stipulation equivalent in value to other evidence? In *Old Chief*, the court recognized the government's position that "the prosecution is entitled to prove its case by evidence of its own choice, or, more exactly, that a criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the Government chooses to present it." *Id.* at 186-187. The court acknowledged that an abstract admission does not have the persuasive power or narrative value of conventional evidence, which can help tell "a colorful story with descriptive richness." *Id.* at 187. And the court wrote that stipulations and admissions do not square with a juror's expectations of the type of evidence he or she should experience in a trial: "If suddenly the prosecution presents some occurrence in the series differently, as by announcing a stipulation or admission, the effect may be like saying, 'never mind what's behind the door,' and jurors may well wonder what they are being kept from knowing." *Id.* at 188-189.

**{¶ 26}** But the court concluded that the value and necessity of allowing the prosecution to tell its story of the case does not extend to evidence of an event—a prior conviction that defines the defendant's legal status—that exists outside the factual scenario of the case at hand:

> This recognition that the prosecution with its burden of persuasion needs evidentiary depth to tell a continuous story has, however, virtually no application when the point at issue is a defendant's legal status, dependent on some judgment rendered wholly independently of the concrete events of later criminal behavior charged against him.

*Id.* at 190.

**{¶ 27}** The court pointed out that the choice of evidence to prove a defendant's legal status is one of "slightly varying abstraction, either a record

saying that conviction for some crime occurred at a certain time or a statement admitting the same thing without naming the particular offense." *Id.*

{¶ 28} Further, because "Congress * * * has made it plain that distinctions among generic felonies do not count for this purpose; the fact of the qualifying conviction is alone what matters under the statute." *Id.* Since virtually any felony could meet the prior-conviction requirement under 18 U.S.C. 991(g)(1), "[t]he most the jury needs to know is that the conviction admitted by the defendant falls within the class of crimes that Congress thought should bar a convict from possessing a gun, and this point may be made readily in a defendant's admission and underscored in the court's jury instructions." *Old Chief*, 519 U.S. at 190-191, 117 S.Ct. 644, 136 L.Ed.2d 574.

{¶ 29} Because the issue of the defendant's status falls so far outside what the prosecution has to prove regarding the current offense, a stipulation or admission is as useful to the prosecution as the record of conviction:

> [T]he most obvious reason that the general presumption that the prosecution may choose its evidence is so remote from application here is that proof of the defendant's status goes to an element entirely outside the natural sequence of what the defendant is charged with thinking and doing to commit the current offense. Proving status without telling exactly why that status was imposed leaves no gap in the story of a defendant's subsequent criminality, and its demonstration by stipulation or admission neither displaces a chapter from a continuous sequence of conventional evidence nor comes across as an officious substitution, to confuse or offend or provoke reproach.

*Id.* at 191.

**{¶ 30}** The court thus concluded that "there is no cognizable difference between the evidentiary significance of an admission and of the legitimately probative component of the official record the prosecution would prefer to place in evidence." *Id.* In terms of probative value, a stipulation and the official record are equal. So when weighing the probative against the prejudicial, the distinguishing characteristic between the two types of competing evidence is that one carries inherent risk and the other does not. *Id*. The equality in the evidentiary value of the evidence discounts the probative value of the official record. Thus, the court held that in Old Chief's case, "as in any other in which the prior conviction is for an offense likely to support conviction on some improper ground, the only reasonable conclusion was that the risk of unfair prejudice did substantially outweigh the discounted probative value of the record of conviction, and it was an abuse of discretion to admit the record when an admission was available." *Id.* The court stated that this holding would be the general rule under Fed.R.Evid. 403 "when proof of convict status is at issue." *Id.* at 192.

**{¶ 31}** But should *Old Chief* apply in Ohio? *Old Chief* applies a federal rule to a federal statute, so it is not binding on this court. However, "federal law interpreting a federal rule, while not controlling, is persuasive authority in interpreting a similar Ohio rule." *Stammco, L.L.C. v. United Tel. Co. of Ohio*, 136 Ohio St.3d 231, 2013-Ohio-3019, 994 N.E.2d 408, ¶ 18.

**{¶ 32}** Evid.R. 403(A) is virtually identical to the federal rule. It reads: "Exclusion mandatory. Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." There is one difference between the Ohio rule and the federal rule: under Ohio's version of the rule, the exclusion of evidence is mandatory when probative value is substantially outweighed by the danger of unfair prejudice, whereas under the federal rule interpreted in *Old Chief*, exclusion was discretionary. This is not a significant difference for present

purposes, but it is noteworthy that the Ohio rule is more protective of a defendant who is potentially affected by prejudicial evidence.

{¶ 33} The more significant difference here is between 18 U.S.C. 922(g)(1) and Ohio's weapons-under-disability statute, R.C. 2923.13. Ohio's statute reads in relevant part:

> (A) Unless relieved from disability under operation of law or legal process, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:
>
> * * *
>
> (2) The person is under indictment for or has been convicted of any felony offense of violence * * *.
>
> (3) The person is under indictment for or has been convicted of any felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse * * *.

R.C. 2923.13.

{¶ 34} The Ohio statute is somewhat more specific than the federal statute at issue in *Old Chief*. It refers to felony offenses of violence and felony drug offenses rather than generic felonies. But still, like the statute in *Old Chief*, it, too, encompasses broad categories rather than specific offenses. "Offense of violence" is defined in R.C. 2901.01(A)(9); that statute lists over 35 specific statutory violations as included under the definition as well as the violation of any substantially equivalent municipal ordinance, state law, or federal law. It also includes offenses under any municipal ordinance or law of any state or of the United States "committed purposely or knowingly, and involving physical harm to persons

14

or a risk of serious harm to persons." Likewise, in regard to felony drug offenses that qualify as disabilities under R.C. 2923.13(A), there are a myriad of permutations of drug offenses contained in R.C. Chapter 2925.

{¶ 35} We adopt the reasoning of *Old Chief* but acknowledge the differences between R.C. 2923.13(A) and 18 U.S.C. 922(g)(1) in applying the holding to the Ohio statute. In *Old Chief*, the court noted that "the fact of the qualifying conviction is alone what matters under the statute" and that "[t]he most the jury needs to know is that the conviction admitted by the defendant falls within the class of crimes that Congress thought should bar a convict from possessing a gun." *Old Chief*, 519 U.S. at 190-191, 117 S.Ct. 644, 136 L.Ed.2d 574. What mattered for purposes of the federal statute is that the defendant had been sentenced to a crime punishable with a sentence of more than a year in prison. The General Assembly in R.C. 2923.13 made some distinctions in determining the classes of crimes that should bar a convict from possessing a gun, but the classes are still broad. What matters to the General Assembly—and an element that the state must prove—is that the crime the defendant was convicted of was either a "felony offense of violence" or a "felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse." R.C. 2923.13(A)(2) and (3). In regard to R.C. 2923.13, a stipulation or admission concerning the status element would necessarily include the fact that the defendant was under indictment or had previously been convicted of a crime falling within those broad categories.

{¶ 36} In this case, the evidence offered by the state establishing the name and nature of Creech's prior convictions and indictment created a risk of unfair prejudice to him. " 'Unfair prejudice is that quality of evidence which might result in an improper basis for a jury decision. Consequently, if the evidence arouses the jury's emotional sympathies, evokes a sense of horror, or appeals to an instinct to punish, the evidence may be unfairly prejudicial.' " *Oberlin v. Akron Gen. Med.*

*Ctr.*, 91 Ohio St.3d 169, 172, 743 N.E.2d 890 (2001), quoting Weissenberger, *Ohio Evidence*, Section 403.3, at 85-87 (2000). As the court noted in *Old Chief*, "Where a prior conviction was for a gun crime or one similar to other charges in a pending case the risk of unfair prejudice would be especially obvious * * *." *Old Chief* at 185. Here, the trial court admitted into evidence a judgment entry for Creech's conviction for felonious assault with a deadly weapon, R.C. 2903.11(A)(2), that set forth the fact that Creech had shot at his victim. This evidence "would be arresting enough to lure a juror into a sequence of bad character reasoning," *Old Chief* at 185, especially since it involved another offense with a gun.

{¶ 37} Likewise, setting out Creech's felony drug offenses with specificity—that he had been convicted of possessing crack cocaine and had been charged with two counts of trafficking in cocaine (including one count of trafficking near a school)—also was potentially prejudicial, in that it put before the jury the name and nature of the drug offenses rather than the generalized description of the disability as set forth in the statute. Especially damaging is the indictment submitted to the jury, which alleges that Creech trafficked cocaine and that he had engaged in that felonious activity in the recent past—on one occasion, near a school.

{¶ 38} The fact that Creech's prior convictions and indictment could have been established through stipulation discounts the probative value of the evidence offered by the state. We agree with *Old Chief* that "[g]iven these peculiarities of the element of felony-convict status and of admissions and the like when used to prove it, there is no cognizable difference between the evidentiary significance of an admission and of the legitimately probative component of the official record the prosecution would prefer to place in evidence," *Old Chief*, 519 U.S. at 191, 117 S.Ct. 644, 136 L.Ed.2d 574. The state would not have been hamstrung in its ability to present its story of the case had the trial court accepted a stipulation, as Creech's legal status is separate from the shooting incident at the heart of this case. "[P]roof

16

of the defendant's status goes to an element entirely outside the natural sequence of what the defendant is charged with thinking and doing to commit the current offense." *Id.*

{¶ 39} The discounted probative value of the state's evidence was substantially outweighed by the danger of unfair prejudice in this case, and thus the trial court abused its discretion in admitting that evidence. The limiting instruction the trial court gave to the jury—to not consider the evidence "to prove the character of the defendant in order to show that he acted in conformity or accordance with that character"—was insufficient to overcome the admission of inadmissible evidence of Creech's prior convictions and indictment. "[I]f there would be danger of unfair prejudice, evidence ordinarily admissible for a limited purpose should not be admitted even with a limiting instruction." 1980 Staff Notes, Evid.R. 105. Finally, we agree with the determination of the court of appeals that the trial court's error was not harmless.

## CONCLUSION

{¶ 40} Pursuant to Evid.R. 403, in a case alleging a violation of R.C. 2923.13, when the name or nature of a prior conviction or indictment raises the risk of a jury verdict influenced by improper considerations, a trial court abuses its discretion when it refuses a defendant's offer to stipulate to the fact of the prior conviction or indictment and instead admits into evidence the full record of the prior judgment or indictment when the sole purpose of the evidence is to prove the element of the defendant's prior conviction or indictment.

{¶ 41} Upon remand, the trial court should accept Creech's stipulations as to each count either that he has been convicted of a felony offense of violence or that he has been convicted of or indicted for a felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse.

{¶ 42} Accordingly, we affirm the judgment of the court of appeals.

Judgment affirmed.

O'CONNOR, C.J., and LANZINGER, FRENCH, and O'NEILL, JJ., concur.

O'DONNELL, J., dissents and would dismiss the cause as improvidently accepted.

KENNEDY, J., dissents, with an opinion.

_____

**KENNEDY, J., dissenting.**

{¶ 43} The trial court did not deviate from a legal rule when it denied the unilateral offer of appellee, Stedmund Creech, to stipulate to the disability element of one of the three charged counts of having a weapon while under disability on the basis that all three counts would merge for purposes of sentencing. Therefore, I dissent. I would reverse the judgment of the court of appeals and reinstate Creech's convictions.

{¶ 44} The state charged Creech with one count of having a weapon while under disability pursuant to R.C. 2923.13(A)(2) and two counts of having a weapon while under disability pursuant to R.C. 2923.13(A)(3). On the day of trial, defense counsel addressed the trial court: "Obviously if [Creech is] convicted of all three [weapon-under-disability] offenses, they will *merge* for purposes of sentencing at that time, so I am willing to *stipulate to a disability in any one of those counts* and would ask that the State of Ohio be precluded from presenting evidence with regard to the other two * * *." (Emphasis added.) In response, the prosecutor argued that merger properly occurs at the time of sentencing. She referenced prior precedent from the Seventh District Court of Appeals addressing the issue of allied offenses of similar import. *See State v. Hancock*, 7th Dist. Jefferson No. 09-JE-30, 2010-Ohio-4854, ¶ 51-66.

{¶ 45} In addressing Creech's unilateral stipulation offer, the trial court stated, "I don't believe the State is required to elect at this point in time or to even accept a stipulation, and therefore, I'm going to go forward with the indictment

18

with all the charges that were presented." Ultimately, a jury convicted Creech of all three weapon charges under R.C. 2923.13(A).

**{¶ 46}** The above-quoted exchange between counsel and the court illustrates that Creech was making a unilateral offer to stipulate to the disability element of one count of having a weapon while under disability on the basis that if he were convicted on all three counts, they would merge for purposes of sentencing. At no time did Creech offer to stipulate to the disability element of all three counts.

**{¶ 47}** Creech's assertion in the trial court that it could not impose separate sentences if he were convicted of all three weapon-under-disability offenses is correct. See R.C. 2941.25(A); *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 24 (describing rule of merger of allied offenses of similar import). However, the rule of merger of allied offenses of similar import does not preclude the state from charging a defendant with multiple counts "for all such offenses" or from seeking and obtaining a finding of guilty "for all such offenses," R.C. 2941.25. *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, ¶ 17.

**{¶ 48}** In *State v. Perry*, a unanimous decision of this court, we established the process to properly review errors alleged to have occurred at trial. 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643. We concluded that prior to considering which standard of appellate review applies—harmless error pursuant to Crim.R. 52(A) or plain error pursuant to Crim.R. 52(B)—"our threshold inquiry is [to determine] 'whether there was an "error"—i.e., a "[d]eviation from a legal rule." ' " *Perry* at ¶ 6, quoting *State v. Fisher*, 99 Ohio St.3d 127, 2003-Ohio-2761, 789 N.E.2d 222, ¶ 7, quoting *United States v. Olano*, 507 U.S. 725, 732-733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).

**{¶ 49}** In applying that procedure in *Perry*, this court first reviewed the alleged error. Id. The appellant argued that the trial court erred by failing to maintain the written jury instructions "with the papers of the case" pursuant to R.C. 2945.10(G). *Perry* at ¶ 7. We determined that the trial court did, in fact, deviate

from that legal rule by failing to preserve the written jury instructions. *Id*. at ¶ 8. We then proceeded to the second step of the analysis—to determine which standard of appellate review applied. *Id*. at ¶ 9-16.

**{¶ 50}** Creech argues that *Old Chief v. United States*, 519 U.S. 172, 117 S.Ct. 694, 136 L.Ed.2d 574 (1997), required the prosecution to accept Creech's unilateral stipulation offer. However, that characterization is inaccurate.

**{¶ 51}** Creech offered to stipulate to the disability element of only one count of having a weapon while under disability. Creech never agreed to stipulate to the disability element of all three counts of having a weapon while under disability. Therefore, Creech was attempting to preclude the state from seeking guilty verdicts on two of the weapon-under-disability counts charged in the indictment.

**{¶ 52}** A prosecutor has broad discretion in reaching plea agreements with a defendant. *See Bordenkircher v. Hayes*, 434 U.S. 357, 364-365, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978). The state is not required to offer a defendant a plea bargain. *State v. Hart*, 8th Dist. Cuyahoga No. 84531, 2005-Ohio-107, ¶ 10, citing *Mabry v. Johnson*, 467 U.S. 504, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984). Therefore, the trial court did not deviate from a legal rule when it denied Creech's unilateral offer to stipulate to the disability element of one count of having a weapon while under disability, and our analysis should end here.

**{¶ 53}** Even if the trial court did err, the second step of the *Perry* analysis would have to be considered—to determine the appropriate standard of appellate review pursuant to Crim.R. 52. Here, Creech did not ask the trial court to apply *Old Chief*; it was not until direct appeal that Creech first argued that *Old Chief* was applicable. At trial, Creech sought only to stipulate to the disability element of one count of having a weapon while under disability on the basis that all three counts would merge for purposes of sentencing if he were convicted. Therefore, the appropriate standard of review is the plain-error standard pursuant to Crim.R. 52(B).

**{¶ 54}** "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). Under the plain-error standard, an alleged error is not a plain error unless the error clearly changed the outcome of the trial. *State v. Hill*, 92 Ohio St.3d 191, 203, 749 N.E.2d 274 (2001), citing *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph two of the syllabus. Moreover, the defendant bears the burden of demonstrating that the plain error affected a substantial right. *Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, at ¶ 14. "[A] reviewing court must ask * * * whether the alleged error substantially affected the outcome of the trial." *State v. Slagle*, 65 Ohio St.3d 597, 604-605, 605 N.E.2d 916 (1992). It "must examine the error * * * in light of all of the evidence properly admitted at trial and determine whether the jury would have convicted the defendant even if the error had not occurred." *Id*. at 605.

**{¶ 55}** The majority opinion "agree[s]" with the court of appeals' determination that the purported error of not permitting Creech to stipulate to one disability element in one count of the indictment was not harmless. Majority opinion at ¶ 39.

**{¶ 56}** However, that is the wrong standard. Creech raised *Old Chief* for the first time in the court of appeals. Therefore, the proper standard of review was plain error, not harmless error.

**{¶ 57}** The trial court did not deviate from a legal rule when it denied Creech's unilateral offer to stipulate to the disability element of one of the three charged counts of having a weapon while under disability on the basis that all three counts would merge for purposes of sentencing. Therefore, I dissent. I would reverse the judgment of the court of appeals and reinstate Creech's convictions.

_____

Jane M. Hanlin, Jefferson County Prosecuting Attorney, for appellant.

Timothy Young, Ohio Public Defender, and Stephen P. Hardwick, Assistant Public Defender, for appellee.

_____