[Cite as *State v. Jozwiak*, 2020-Ohio-3694.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2019-09-091 |
| | : | O P I N I O N |
| - vs - | | 7/13/2020 |
| | : | |
| MATTHEW D. JOZWIAK, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 17CR33400

David P. Fornshell, Warren County Prosecuting Attorney, Kathryn M. Horvath, 520 Justice Drive, Lebanon, Ohio 45036, for appellee

Thomas G. Eagle Co., L.P.A., Thomas G. Eagle, 3400 N. State Route 741, Lebanon, Ohio 45036, for appellant

**RINGLAND, J.**

{¶1} Appellant, Matthew D. Jozwiak, appeals from his conviction and sentence in the Warren County Court of Common Pleas for operating a vehicle while under the influence of alcohol or drug of abuse ("OVI"). For the reasons discussed below, we affirm his conviction and sentence.

{¶2} On August 25, 2017, at around one o'clock in the morning, a police officer with the Springboro Police Department observed a vehicle make a right turn at an intersection without giving a turn signal. The officer followed the vehicle and observed it slowly weaving within the lane of travel, although the vehicle did not cross the pavement lines marked on the roadway. The officer activated his police vehicle's emergency lights to initiate a traffic stop. The vehicle slowed its speed but did not immediately pull over. Eventually the vehicle turned into the parking lot of a Taco Bell restaurant. Instead of pulling forward into one of the unoccupied parking spaces, the vehicle came to a stop within the lane of travel.

{¶3} At that point, the officer approached the vehicle on foot. The officer identified appellant to be the operator and sole occupant of the vehicle. The officer requested appellant's driver's license and proof of insurance and engaged in a series of questions with appellant. Appellant produced the insurance documents and answered the questions but did not provide his driver's license until the officer again requested that document. During this encounter, the officer noticed a slight odor of an alcoholic beverage emanating from the vehicle. The officer took the documents and returned to his vehicle to process the information. After verifying appellant's identification, the officer learned that appellant's driving privileges in Ohio had been suspended and that he had prior OVI convictions. The officer returned and told appellant to step out of his vehicle and walk back to the police cruiser.

{¶4} The officer asked appellant another series of questions, inquiring whether appellant had any prior OVIs or if he had consumed alcohol recently. Appellant denied having any prior OVI convictions or drinking alcohol. While speaking with appellant, the officer detected a strong odor of an alcoholic beverage coming from appellant's person, and noticed that appellant exhibited glassy eyes, slurred speech, and had difficulty responding to the questions indicating divided attention issues. The officer then requested appellant

take a preliminary breath test ("PBT") from a portable device. Appellant agreed to take the test but was ultimately unable or unwilling to successfully perform the PBT despite multiple attempts.

{¶5} At this point, other law enforcement personnel arrived to aid the officer. The officer asked appellant to complete three field sobriety tests ("FSTs"): the horizontal gaze nystagmus ("HGN"), the walk-and-turn, and the one-leg stand tests. After administering these tests, the officer determined that appellant was appreciably impaired and placed appellant under arrest. At the police station, the officer requested that appellant submit to a chemical breath test and notified appellant about the consequences of refusal. Appellant refused to take the test.

{¶6} Based on the foregoing events, the Warren County Grand Jury indicted appellant on two counts of OVI, the first count in violation of R.C. 4511.19(A)(1)(a) for operating the vehicle while impaired and the second count in violation of R.C. 4511.19(A)(2) for his refusal to submit to the chemical test. Both counts were charged as third-degree felonies because appellant had previously been convicted of a felony OVI. Each count of the indictment also included a specification that appellant had been convicted of five or more OVIs within 20 years.

{¶7} The matter proceeded to a jury trial in July 2019.[1] At trial, the state called one witness, the arresting officer, to testify. In addition, the state admitted into evidence, inter alia, the video recording taken from the officer's patrol vehicle, the BMV form 2255 read to appellant before he refused the chemical test, and five judgment of conviction entries for the prior OVI convictions. The jury found appellant guilty of both counts and both of the specifications.

---

1. After his arrest, but prior to being served with the indictment, appellant violated the conditions of his bail and fled. Appellant was later apprehended in May 2019.

{¶8} At the sentencing hearing in August 2019, the trial court merged count one into count two. The trial court sentenced appellant to 24 months in prison on count two and an additional three years for the specification. The terms of imprisonment were run consecutively to each other, for a total sentence of five years imprisonment. The trial court further ordered appellant to pay a mandatory fine of $1,350, pay a separate fine of $60,000 in lieu of a vehicle forfeiture, and imposed a class 2 license suspension. After his sentencing hearing appellant moved for a new trial on the basis of ineffective assistance of counsel. The trial court denied the motion.

{¶9} Appellant now appeals raising three assignments of error for review.

{¶10} Assignment of Error No. 1:

{¶11} THE TRIAL COURT ERRED IN CONVICTING APPELLANT.

{¶12} In his first assignment of error, appellant argues that his conviction should be reversed because he received ineffective assistance of counsel. In support, appellant presents several issues for review: trial counsel's failure to file a motion to suppress the traffic stop and results of the field sobriety tests; counsel's failure to object to multiple evidentiary matters; and, counsel's failure to object to the prosecutor's comments on appellant's silence. Appellant further argues that if the alleged errors are not individually reversible, this court should reverse his conviction based on cumulative error. Alternatively, appellant argues that some of the alleged errors amounted to plain error pursuant to Crim.R. 52(B).

Standard of Review

{¶13} A defendant has the right to effective assistance of counsel in a criminal proceeding pursuant to the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052 (1984); *State v. Hester*, 45 Ohio St.2d 71, 79 (1976). The defendant bears the

burden of proving that his trial counsel was constitutionally infirm. *State v. Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, ¶ 142. To prevail on an ineffective assistance of counsel claim, appellant must demonstrate that (1) his trial counsel's performance was deficient, that is, it fell below an objective standard of reasonable representation, and (2) he suffered prejudice, that is, there is a reasonable probability the outcome of the proceeding would have been different but for trial counsel's errors. *State v. Taylor*, 12th Dist. Fayette No. CA2018-11-021, 2019-Ohio-3437, ¶ 16, citing *Strickland* at 687-688, and *State v. Mundt*, 115 Ohio St.3d 22, 2007-Ohio-4836, ¶ 62. A failure to satisfy either prong of this test is fatal to the ineffective assistance claim. *State v. Manning*, 12th Dist. Butler No. CA2017-08-113, 2018-Ohio-3334, ¶ 20. "Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *State v. Burns*, 12th Dist. Clinton No. CA2013-10-019, 2014-Ohio-4625, ¶ 7.

{¶14} As to appellant's alternative argument, to constitute plain error there must be an obvious deviation from a legal rule that affected appellant's substantial rights, that is, the error must have affected the outcome of the trial. *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). Notice of plain error must be taken with utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

Motion to Suppress

{¶15} Appellant argues that he received ineffective assistance because his trial counsel did not file a pretrial motion to suppress evidence from the traffic stop and the results of the FSTs. He contends that the officer did not have a constitutionally valid basis to initiate the traffic stop and the state failed to demonstrate that the police officer conducted the FSTs in substantial compliance with acceptable testing standards as required by R.C. 4511.19(D)(4)(b).

{¶16} The failure to file a motion to suppress does not constitute per se ineffective assistance of counsel. *State v. Brown*, 115 Ohio St.3d 55, 2007-Ohio-4837, ¶ 65. To amount to ineffective assistance, appellant must demonstrate that the motion would have been successful if made. *State v. Resendiz*, 12th Dist. Preble No. CA2009-04-012, 2009-Ohio-6177, ¶ 29. An appellate court will presume that trial counsel provided effective assistance if counsel could have reasonably determined that a motion to suppress would have been futile. *State v. Dominguez*, 12th Dist. Preble No. CA2011-09-010, 2012-Ohio-4542, ¶ 20.

{¶17} Initially, appellant claims his motion to suppress would have succeeded because the police officer lacked a sufficient basis to initiate the traffic stop. The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution prohibit unreasonable automobile stops. *Bowling Green v. Godwin*, 110 Ohio St.3d 58, 2006-Ohio-3563, ¶ 11. However, "where an officer has an articulable reasonable suspicion or probable cause to stop a motorist for any criminal violation, including a minor traffic violation, the stop is constitutionally valid regardless of the officer's underlying subjective intent or motivation for stopping the vehicle in question." *Dayton v. Erickson*, 76 Ohio St.3d 3, 11-12 (1996); *accord State v. Egnor*, 12th Dist. Warren No. CA2019-05-042, 2020-Ohio-327, ¶ 17.

{¶18} Here, the officer had probable cause to believe appellant committed a traffic violation. The officer testified that when he first encountered appellant, appellant was stopped at an intersection waiting for the traffic light to change. While appellant was stopped, the officer observed that appellant did not have his turn signal illuminated or otherwise provide a statutorily compliant signal indicating an intent to turn. When the traffic control device permitted appellant to continue through the intersection, appellant instead made a right turn onto the cross-street. Pursuant to R.C. 4511.39(A), "[n]o person shall

turn a vehicle * * * right or left upon a highway unless and until such person has exercised due care to ascertain that the movement can be made with reasonable safety nor without giving an appropriate signal in the manner hereinafter provided." The officer's observation that appellant failed to provide a turn signal gave the officer probable cause that appellant violated R.C. 4511.39. Accordingly, the traffic stop was constitutionally valid because it was based on probable cause that a violation of the traffic code had been committed. Given that, it was reasonable for appellant's trial counsel to determine that a motion to suppress on this particular basis would have been futile.

{¶19} Next, appellant contends that a motion to suppress would have been successful because the state failed to demonstrate the FSTs were substantially compliant with a testing standard in effect when the tests were conducted. R.C. 4511.19(D)(4)(b) provides that a law enforcement officer may testify to the results of the FSTs if it is shown by clear and convincing evidence the officer conducted the tests in substantial compliance with a testing standard, such as the standard promulgated by the National Highway Traffic Safety Administration ("NHTSA"). This court has held that the state's burden of proving substantial compliance is contingent on the particularity of the defendant's claims regarding the tests, that is, if the defendant only generally contests the officer's performance, there is only a slight burden of proof on the state and it may demonstrate substantial compliance in general terms. *See e.g., State v. Way*, 12th Dist. Butler No. CA2008-04-098, 2009-Ohio-96, ¶ 8. The state may establish that a law enforcement officer performed in substantial compliance with a testing standard through testimonial or documentary evidence about the specific standard used and the officer's testimony that he acted in conformity with that standard. *See State v. Perkins*, 10th Dist. Franklin No. 07AP-924, 2008-Ohio-5060, ¶ 16.

{¶20} This court has previously discussed in detail the process required to perform the FSTs according to the NHTSA manual. For instance, we have explained that in order

to correctly perform the HGN,

> a police officer should instruct the suspect that [he is] going to check the suspect's eyes, that the suspect should keep [his] head still and follow the stimulus with [his] eyes, and that the suspect should do so until told to stop. After these initial instructions are provided, the officer is instructed to position the stimulus approximately 12 to 15 inches from the suspect's nose and slightly above eye level. The officer is then told to check the suspect's pupils to determine if they are of equal size, the suspect's ability to track the stimulus, and whether the suspect's tracking is smooth. The officer is then to check the suspect for nystagmus at maximum deviation and for onset of nystagmus prior to 45 degrees. The manual instructs the officer to repeat each of the three portions of the HGN test.
>
> In addition, the NHTSA guidelines list certain approximate and minimum time requirements for the various portions of the test. For instance, when checking for smooth pursuit, the time to complete the tracking of one eye should take approximately four seconds. When checking for distinct nystagmus at maximum deviation, the examiner must hold the stimulus at maximum deviation for a minimum of four seconds. When checking for the onset of nystagmus prior to 45 degrees, the officer should move the stimulus from the suspect's eye to his shoulder at an approximate speed of four seconds.

(Internal quotations and citations omitted.) *State v. Clark*, 12th Dist. Brown No. CA2009-10-039, 2010-Ohio-4567, ¶ 22-23; *accord State v. Bresson*, 51 Ohio St.3d 123, 125 (1990), fn. 4. This court has similarly detailed the NHTSA standards for the walk-and-turn and the one-leg stand tests. *State v. Deluca*, 12th Dist. Butler No. CA2016-03-055, 2017-Ohio-1235, ¶ 12-15. Moreover, the Ohio Supreme Court has explained, "the only requirement prior to admission [of the HGN test] is the officer's knowledge of the test, his training, and his ability to interpret his observations." *Bresson* at 129; *accord State v. Boczar*, 113 Ohio St.3d 148, 2007-Ohio-1251, ¶ 27 (the foundation required for admitting the HGN test is the administering officer's training, the ability to administer the test, and the actual technique used).

{¶21} At trial, the officer testified that he received training on how to perform the

FSTs initially at the police academy and through an additional course, Advanced Roadside Impaired Driving Enforcement ("ARIDE"). The officer testified about how the FSTs are to be conducted, the specific manner in which he performed the tests, and that he performed the tests in conformity with his training. The officer further testified that he was NHTSA trained and certified. Over the course of his testimony, the officer explained that the tests and his training were based on a "study" from NHTSA.[2] While appellant points to a statement the officer made on cross-examination that he was not trained under the NHTSA manual, we nevertheless find that there was sufficient evidence in the record to show the officer utilized the NHTSA testing standard. Additionally, appellant has not shown how the officer's performance of the FSTs failed to comply with the NHTSA testing standard. Therefore, based on the officer's trial testimony we find that a motion to suppress the FSTs results would have been futile. Even if the trial court had granted a motion to suppress the results of the FSTs, there were other indicia of impairment such that the trial court could have determined the officer had probable cause to arrest appellant for an OVI offense. As such, a motion to suppress on this basis would have likewise been futile.

{¶22} Moreover, appellant's ineffective assistance claim fails because appellant cannot demonstrate that the failure to file a motion to suppress prejudiced him. The officer testified that prior to the administration of the FSTs, he observed several indicia of impairment, such as appellant's difficulty maintaining a straight course while driving, appellant's slurred and broken speech, a strong odor of an alcoholic beverage emanating from appellant, and appellant's divided attention issues when responding to questions. Again, even if the results of an FST have been excluded, "a law enforcement officer may

---

2. The state did not seek clarification on what the officer meant by the term "study," although the officer used that term in describing how identifying a certain number of clues from the FSTs demonstrates a specific statistical likelihood that the test subject is impaired.

testify at trial regarding observations made during a defendant's performance of nonscientific standardized field sobriety tests". *State v. Schmitt*, 101 Ohio St.3d 79, 2004-Ohio-37, ¶ 15. Consequently, it was admissible for the officer to testify about his observations of appellant during the FSTs, such as appellant's difficulty maintaining his balance, appellant's difficulty understanding the testing instructions, and appellant's inability to follow the instructions. In addition to the officer's testimony, there was a video recording of the encounter which allowed the jury to observe appellant's actions and demeanor. Therefore, appellant cannot demonstrate there is a reasonable probability the outcome of the trial would have been different if the results of the FSTs had been suppressed. *See e.g., State v. Vales*, 5th Dist. Stark No. 2019CA00061, 2020-Ohio-245, ¶ 38 (where defense counsel did not move to suppress FSTs, the defendant failed to establish ineffective assistance because he did not demonstrate the requisite prejudice). Accordingly, appellant's argument that his trial counsel provided ineffective assistance by not filing a motion to suppress lacks merit.

<u>Evidentiary Issues</u>

{¶23} Additionally, appellant argues that his trial counsel provided ineffective assistance of counsel by failing to object to the admission of evidence that he contends was inadmissible. Specifically, appellant argues that his trial counsel erred by not objecting to: the officer's lay opinion on "studies," the officer's testimony regarding appellant's credibility in answering questions, or the use of the PBT device. Appellant further argues that it was plain error to allow evidence of the PBT.

{¶24} Contrary to his argument that counsel did not object to testimony of the "studies," the record shows that appellant's trial counsel contemporaneously objected to this testimony and the court ruled on the objections. Therefore, appellant cannot establish that his trial counsel's performance was deficient on this issue.

{¶25} Additionally, even if we were to determine that appellant's trial counsel was deficient for not objecting to the officer's testimony regarding appellant's credibility or the administration of the PBT, appellant has failed to show how this testimony prejudiced him. The testimony on appellant's credibility and the administration of the PBT were essentially redundant to other admissible evidence introduced at trial. As to the credibility, the officer testified he believed that appellant was dishonest when answering his investigative roadside questions about consuming alcohol and prior OVI convictions. Nonetheless, the officer testified that he detected a strong odor of an alcoholic beverage emanating from appellant and noticed several other indicia of alcohol impairment. Furthermore, appellant stipulated to his prior convictions and the jury had certified judgment entries of those convictions. Therefore, the jury had evidence from which it could determine appellant's credibility without relying on the officer's opinion. Consequently, appellant cannot establish that there is a reasonable probability the outcome of the trial would have been different but for the failure to object to the officer's opinion on appellant's credibility.

{¶26} Likewise, the officer's testimony regarding the administration of the PBT was not prejudicial. Ohio courts have held that both the results of a PBT and the refusal to take the PBT are inadmissible at trial. *In re A.M.I.*, 12th Dist. Warren No. CA2014-07-095, 2015-Ohio-367, ¶ 16-17; *State v. Janick*, 11th Dist. Ashtabula No. 2007-A-0070, 2008-Ohio-2133, ¶ 28; and *State v. Durnwald*, 163 Ohio App.3d 361, 2005-Ohio-4867, ¶ 40 (6th Dist.). However, evidence of a refusal to submit to chemical breath test that has been approved by the Ohio Department of Health and listed in Ohio Adm.Code 3701-53-02 is admissible evidence. *See In re A.M.I.* at ¶ 16-17. Furthermore, the jury may reasonably infer that a defendant's refusal to take an approved chemical breath test, without offering an explanation for the refusal, indicates the defendant's fear of the test result and a consciousness of guilt. *State v. Cunningham,* 12th Dist. Butler No. CA2017-03-034, 2018-

Ohio-912, ¶ 19, citing *Westerville v. Cunningham,* 15 Ohio St.2d 121, 122 (1968). At trial, the officer testified that appellant refused to submit to an approved chemical breath test at the police station and did not offer an explanation for the refusal. By appellant's refusal to take the approved chemical test and the other admissible evidence, the jury had evidence by which to infer appellant's guilt irrespective of the PBT.[3] Appellant has failed to demonstrate that there is a reasonable probability the outcome of his trial would have been different but for trial counsel's failure to object to the evidence regarding the PBT. Finally, the admission of testimony regarding the administration of the PBT was not plain error.

{¶27} Appellant's claims regarding ineffective assistance of counsel and plain error for the forgoing evidentiary issues are not well taken.

### Stipulated Evidence

{¶28} Appellant argues that his counsel provided ineffective assistance by referring to the prior convictions in his closing argument, failing to object to the officer's testimony about prior OVI convictions, and failing to object to the prosecutor's comments on those convictions, all despite stipulating that his prior criminal record satisfied an essential element of the OVI offenses. In support, appellant relies on *Old Chief v. United States*, 519 U.S. 172, 117 S. Ct. 644 (1997), and *State v. Creech*, 150 Ohio St.3d 540, 2016-Ohio-8440, to argue that the state improperly exceeded the scope of appellant's stipulation to his prior convictions. Appellant contends that the emphasis on these prior convictions created unfair prejudice in violation of Evid.R. 403 and 404 because it demonstrated a propensity to operate his vehicle while impaired.

{¶29} We find that *Old Chief* and *Creech* are distinguishable from the present case.

---

3. A further distinction is that appellant did not expressly refuse to take the PBT, instead he did not comply with the instructions and the test was discontinued based on the non-compliance. As such, there were no "results" generated by the PBT.

While both of those cases involved an offense that required proof of a prior conviction as an essential element to the underlying offense, in *Old Chief* and *Creech*, that essential element could be established by a type of conviction instead of a specific conviction.[4] The United States Supreme Court determined that "[t]he most the jury needs to know is that the conviction admitted by the defendant falls within the class of crimes" that would provide the qualifying effect to satisfy the essential element. *Old Chief* at 190-191. Similarly, the Ohio Supreme Court determined that under Ohio law a conviction for a broad category of crimes would provide the qualifying effect. *Creech* at ¶ 34-35. In a prosecution for these offenses, a defendant's stipulation or offer to stipulate to the prior conviction provides the same evidentiary value to the government as if the government presents its own evidence. This is because it is the legal status conferred by the prior conviction and not a specific conviction that proves the necessary element in the underlying offense. As such, a stipulation discounts the probative value of the government's evidence. Furthermore, a stipulation lessens the danger of unfair prejudice by limiting the government's ability to reveal the name and nature of the prior conviction. *Id.* at ¶ 38-40.

{¶30} Conversely, the relevant statutes for the cause sub judice—R.C. 4511.19(A)(2) and (G)(1)(e)—require proof of a specific offense, a prior OVI conviction, to prove an essential element of the underlying offense. *See State v. Hoover*, 123 Ohio St.3d 418, 2009-Ohio-4993, ¶ 13. Unlike in *Old Chief* and *Creech*, a stipulation to prior convictions in an OVI prosecution does not discount the probative value of the state's evidence because either alternative includes the existence of the prior OVI conviction. As the Eighth District Court of Appeals has explained, "[t]here was never a mystery to protect

---

4. In *Creech* the specific offense at issue was R.C. 2923.13, i.e. "having weapons while under disability." 150 Ohio St.3d 540, 2016-Ohio-8440 at ¶ 1. *Old Chief* similarly involved a violation of 18 U.S.C. 922(g)(1), that is, the unlawful act of possessing a firearm while prohibited because of a prior felony conviction. 519 U.S. at 174, 117 S. Ct. 644.

as to what [the defendant's] prior offense had been" when the state must prove a prior OVI conviction as part of an OVI prosecution. *Cleveland v. Giering*, 8th Dist. Cuyahoga No. 105020, 2017-Ohio-8059, ¶ 24. Similarly, the Second District Court of Appeals has explained that "there is little difference in terms of impact on the jury between the information that might have been contained in a stipulation and the basic fact of [the defendant's] prior convictions as set forth in [the officer's] testimony and [a documentary exhibit]" at trial for an OVI offense. *State v. Wood*, 2d Dist. Clark No. 2016-CA-69, 2018-Ohio-875, ¶ 40. Therefore, a defendant's stipulation to a prior conviction at an OVI trial does not provide the same benefit as described in *Old Chief* and *Creech*.

{¶31} In the cause sub judice, the state had to prove that appellant had been convicted of a prior felony OVI as an element of the underlying OVI offense and that he had five prior OVI convictions to prove the specifications in the indictment. Besides testimony of the prior convictions and admission of certified judgment entries, the state did not otherwise discuss the context or facts of the prior convictions. Because there was no explanation of the nature of the previous OVIs, the jury was unlikely to ascribe unfair prejudice. Moreover, the trial court instructed the jury not to consider the prior convictions as evidence of appellant's character or that he acted in conformity with that character. A trial court limits potential prejudice by providing limiting instructions. *State v. Sturgill,* 12th Dist. Clermont Nos. CA2013-01-002 and CA2013-01-003, 2013-Ohio-4648, ¶ 19, *overruled on other grounds*, *State v. Burkhead*, 12th Dist. Butler No. CA2014-02-028, 2015-Ohio-1085, ¶ 13. Therefore, there was no violation of Evid.R. 403 or 404 and appellant has failed to demonstrate the requisite prejudice for his ineffective assistance claim. There is no reasonable probability the outcome of the trial would have been different but for his counsel's failure to object to the state's presentation of the prior convictions.

{¶32} Moreover, appellant's argument that it was deficient for his counsel to

reference the prior convictions lacks merit. Appellant's counsel engaged in a trial strategy to persuade the jury that the officer knew appellant's driving record and was therefore biased in his roadside investigation. This court has held that trial strategy, even debatable strategy, is not a basis for finding ineffective assistance. *State v. Woody*, 12th Dist. Clinton No. CA2019-01-001, 2020-Ohio-621, ¶ 10.

The Right to Remain Silent

{¶33} Appellant further argues that he received ineffective assistance of counsel and the trial court committed plain error by allowing the state to "elicit evidence and argue and comment on the fact that Appellant did not answer questions, but remained silent, when questioned by police about his drinking or defenses, and did not present a defense" which violated his Fifth Amendment right against self-incrimination.

{¶34} The Fifth Amendment to the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." The Ohio Supreme Court has held that the use of a defendant's prearrest silence as substantive evidence of guilt violates the Fifth Amendment privilege against self-incrimination. *State v. Leach*, 102 Ohio St.3d 135, 2004-Ohio-2147, paragraph one of the syllabus.

{¶35} Contrary to appellant's argument, the record reveals that appellant did not remain silent during the roadside investigation. Appellant answered the officer's questions by denying that he had consumed alcohol or had any prior OVI convictions. While we note that the officer testified appellant "said nothing" in response to his questions, this was not a declaration by the officer that appellant remained silent in the face of questioning, but merely a recitation of appellant's response to the questions. Appellant told the officer that he had "nothing" to drink. This is supported by the video recording from the police vehicle of the encounter. Therefore, appellant's argument that the state used prearrest silence lacks merit.

{¶36} Furthermore, the state did not comment on appellant's silence or decision not to testify. As explained by the Ohio Supreme Court,

> the prosecutor is not precluded from challenging the weight of the evidence offered in support of an exculpatory theory presented by the defense. Neither must the state, in order to satisfy its own burden of proof, disprove every speculative set of possibly exculpatory circumstances a defendant can suggest, nor refrain from arguing the defendant's failure to provide evidence to support proffered theories of excuse or innocence.

(Citations omitted.) *State v. Collins*, 89 Ohio St. 3d 524, 528 (2000). In his closing argument, the prosecutor pointed out contradictions between appellant's answers and the other evidence, such as appellant's denial that he consumed alcohol even though the officer detected a strong odor of an alcoholic beverage about him. Then, in the rebuttal argument, the prosecutor argued there was no evidence to support defense counsel's alternative explanations for appellant's behavior that morning. Consequently, there was no error here, much less plain error, and an objection would have been meritless. Counsel is not deficient when it forgoes raising a meritless issue. *State v. English*, 12th Dist. Butler No. CA2013-03-048, 2014-Ohio-441, ¶ 41.

### Cumulative Error

{¶37} Finally, appellant argues that even if the individual errors did not merit a reversal of his conviction, this court should consider whether the claimed errors cumulatively deprived appellant of a fair trial. Having determined that there were no errors, harmless or otherwise, we find that appellant received a fair trial. Therefore, the cumulative error doctrine does not apply. *State v. Barton*, 12th Dist. Warren No. CA2005-03-036, 2007-Ohio-1099, ¶ 185-186.

{¶38} Based on the foregoing, appellant's first assignment of error is overruled.

{¶39} Assignment of Error No. 2:

{¶40} THE TRIAL COURT ERRED IN SENTENCING APPELLANT.

- 16 -

{¶41} In his second assignment of error, appellant argues the trial court erred when it ordered appellant to pay a monetary fine in lieu of a vehicle forfeiture pursuant to R.C. 4511.19(G) and 4503.234(E), because appellant was not given adequate notice or an opportunity to be heard on the matter. Appellant also argues that the fine was improper because the trial court relied on improper evidence to determine the value of appellant's vehicle and did not engage in a proportionality analysis.

{¶42} R.C. 4503.234(A) sets forth the requisite notice requirements for a forfeiture from an OVI offense. The prosecutor "shall give the offender written notice of the possibility of forfeiture by sending a copy of the relevant uniform traffic ticket or other written notice to the offender not less than seven days prior to the date of issuance of the forfeiture order." R.C. 4503.234(A). By the plain language of the statute, the receipt of a uniform traffic ticket provides the requisite notice. *State v. Orsik*, 9th Dist. Lorain No. 11CA010097, 2012-Ohio-4331, ¶ 14. Moreover, the receipt of a BMV form 2255 also provides adequate notice. *State v. Cremeans*, 5th Dist. Perry No. 16-CA-00006, 2017-Ohio-4400, ¶ 12. Here, the record demonstrates that, at the time of his arrest, appellant was issued a uniform traffic ticket and provided a BMV form 2255. We note that the BMV form provided a specific advisement that a plea of guilty or conviction for an OVI offense could result in a forfeiture of the vehicle. Consequently, the state provided the proper notice within the timeframe required by the statute.

{¶43} Furthermore, appellant was provided an opportunity to be heard regarding the fine at the sentencing hearing. Appellant, through his counsel, admitted that he had sold his vehicle some time prior to the sentencing hearing. Therefore, the trial court found that R.C. 4503.234(E) applied and appellant was subject to a fine, in lieu of forfeiture, for the value of the vehicle as determined by the publications of the national auto dealers association. The prosecutor tendered that the value of the vehicle was $60,000. Appellant

did not object or otherwise offer an argument as to why that value should not be accepted by the court. Consequently, appellant was properly provided an opportunity to be heard prior to the forfeiture order. Moreover, appellant's argument that the court relied on an improper valuation of the vehicle lacks merit.

{¶44} Next appellant argues that the trial court erred because it did not engage in a proportionality analysis. Appellant's reliance on any proportionality analysis pursuant to the criminal forfeiture provisions in R.C. Chapter 2981 is misplaced. Those provisions are inapplicable because R.C. 2981.02(C) provides that "[t]his chapter does not apply to or limit forfeitures under Title XLV of the Revised Code."

{¶45} To the extent that appellant argues that the fine in lieu of the forfeiture was an "excessive fine" in violation of his rights under the Eighth Amendment to the United States Constitution and Article I, Section 9 of the Ohio Constitution, appellant did not raise the constitutionality of his sentence at the trial level and has therefore forfeited the argument. *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, ¶ 21; *State v. Cargile*, 123 Ohio St.3d 343, 2009-Ohio-4939, ¶ 15. Nevertheless, this court may review for plain error. *In re M.D.*, 38 Ohio St.3d 149, 151 (1988).

{¶46} The trial court did not commit plain error by imposing the fine in lieu of the forfeiture. At the sentencing hearing, the trial court discussed the reasons for its sentence. The court's rationale demonstrates the court engaged in a proportionality analysis. The court found that appellant had operated his vehicle while under a license suspension, had otherwise repeatedly driven while impaired in what the court described as a "pattern that is going to get somebody killed," and appellant knowingly disposed of his vehicle to evade a forfeiture. Appellant has not explained why the trial court's rationale was improper or how the fine was constitutionally disproportionate to his offense. Consequently, the trial court did not commit plain error when it sentenced appellant.

{¶47} Accordingly, appellant's second assignment of error is overruled.

{¶48} Assignment of Error No. 3:

{¶49} THE TRIAL COURT ERRED IN DENYING WITHOUT A HEARING APPELLANT'S MOTION FOR NEW TRIAL.

{¶50} In his third assignment of error, appellant argues that the trial court erred by denying his motion for a new trial without holding a hearing on the matter or making findings of facts and conclusions of law.

{¶51} "Crim.R. 33 motions for a new trial are not to be granted lightly." *State v. Thornton*, 12th Dist. Clermont No. CA2012-09-063, 2013-Ohio-2394, ¶ 21. The decision to grant or deny a motion for a new trial pursuant to Crim.R. 33 is within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. *State v. Hoop*, 12th Dist. Brown No. CA2011-07-015, 2012-Ohio-992, ¶ 15. An abuse of discretion is more than an error of law, it implies that the decision was unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157 (1980). Likewise, the decision on whether to hold a hearing is also within the discretion of the trial court. *State v. Zielinski*, 12th Dist. Warren No. CA2014-05-069, 2014-Ohio-5318, ¶ 16. In denying a Crim.R. 33 motion, a trial court has no duty to issue findings of fact and conclusions of law. *State ex rel. Collins v. Pokorny*, 86 Ohio St.3d 70, 70 (1999).

{¶52} The trial court did not abuse its discretion by denying appellant's motion for a new trial or deciding not to hold a hearing. Appellant did not assert that there was newly discovered evidence, did not request a hearing, and did not attach an affidavit to the motion. Instead, appellant argued that he should be granted a new trial because of ineffective assistance of counsel.

{¶53} This court has previously held that an ineffective assistance of counsel claim may be grounds for a new trial pursuant to Crim.R. 33(A)(1). *State v. Young*, 12th Dist.

Butler No. CA2018-03-047, 2019-Ohio-912, ¶ 33.

{¶54} However, pursuant to Crim.R. 33(B), a defendant must file a motion for a new trial within 14 days of the verdict if the motion for a new trial is not based on newly discovered evidence. If the motion is not filed within that timeframe, a defendant must establish by "clear and convincing proof" that he was unavoidably prevented from filing within that timeframe. Here, the jury rendered its verdict on July 8, 2019.[5] Appellant filed his motion on August 8, 2019. Consequently, the trial court did not abuse its discretion denying the Crim.R. 33 motion because the motion was not filed within the 14-day timeframe required by Crim.R. 33(B) and appellant did not provide clear and convincing proof that he was unavoidably prevented from timely filing the motion. *See State v. Guy*, 10th Dist. Franklin No. 17AP-322, 2018-Ohio-4836, ¶ 63-65 (finding no abuse of discretion in denying motion for new trial because of untimeliness and the claims asserted in the motion were similar to the errors assigned on appeal).

{¶55} Furthermore, the trial court did not err when it denied the Crim.R. 33(B) motion without issuing any findings of fact and conclusions of law. *Pokorny* at 70. Accordingly, appellant's third assignment of error is overruled.

{¶56} Judgment affirmed.

S. POWELL, P.J., and PIPER, J., concur.

---

5. The jury trial concluded on July 8, 2019 and the verdicts were journalized on July 9, 2019. Using either day, appellant's Crim.R. 33 motion was untimely filed.